IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| RICHARD A. ATKINSON, M.D., et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MORGAN ASSET MANAGEMENT, INC., et al.<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 07-2784<br>)<br>)<br>)<br>) |
| ELIZABETH P. WILLIS and SAM H. PEARSON, Individually and on behalf all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MORGAN KEEGAN & COMPANY, INC., et al.<br><br>            Defendants | )<br>)<br>)<br>)<br>)<br>)  No. 07-2830<br>)<br>)<br>)<br>) |
| LARRY F. and CHARLOTTE C. HARTMAN, Individually and on behalf all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MORGAN KEEGAN & COMPANY, INC., et al.<br><br>            Defendants | )<br>)<br>)<br>)<br>)<br>)  No. 08-2071<br>)<br>)<br>)<br>) |

```
JAMES L. GREGORY, et al.,                )
                                         )
    Plaintiffs,                          )
                                         )
v.                                       )   No. 08-2078
                                         )
MORGAN KEEGAN & COMPANY, INC., et al.    )
                                         )
              Defendants                 )
                                         )
─────────────────────────────────────── )
                                         )
WILIAM J. DEJOSEPH, Individually and on  )
behalf all others similarly situated,    )
                                         )
    Plaintiffs,                          )
                                         )   No. 08-2212
v.                                       )
                                         )
MORGAN KEEGAN & COMPANY, INC., et al.    )
                                         )
              Defendants                 )
```

---

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR PARTIAL CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF COUNSEL

---

Before the Court are two motions to consolidate and three motions to appoint lead plaintiff and approve lead and liaison counsel filed by the Aviotti/Landers Group, G. A. Robinson, and Walter Kirkbride. The motions were filed in five putative class actions brought on behalf of investors in seven proprietary funds offered by Morgan Keegan from December 2004 to February 2008. Plaintiffs in the putative class actions allege that Defendants misrepresented the investment strategy the funds used and violated the Securities Act of 1933 ("Securities Act"), 15

U.S.C. §§ 77a et seq., the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a et seq., and the Investment Company Act of 1940 ("ICA"), 15 U.S.C. §§ 80a et seq.

The Aviotti/Landers Group moves for partial consolidation, appointment of themselves as lead plaintiff, and approval of two law firms as co-lead counsel and one firm as liaison counsel. (Aviotti/Landers Mot. Consol. Appt. L. Pl. and Appr. L. Counsel Feb. 4, 2008 at 3.)  The Aviotti/Landers Group moves to consolidate the claims and act as lead plaintiff only on behalf of investors in the Open-End Funds.  (Id.)  G. A. Robinson moves the Court to appointment him lead plaintiff on behalf of investors in the RHY Fund and to approve his selection of co-lead counsel.[1] (Robinson Br. Partial Opp'n to Consol. Feb. 26, 2008 at 3.)

Walter Kirkbride moves to consolidate the Gregory and DeJoseph actions (the Closed-End Fund cases), for appointment of himself as lead plaintiff and for approval of lead counsel, an Executive Committee made up of two law

---

[1] G. A. Robinson does not move for consolidation.  (Robinson/Massey Mot. Serve L. Pl. and Apprv. Co-Lead Counsel Feb. 4, 2008.)  He does not oppose consolidation of the RHY Fund with the closed-end funds and suggests that it will be efficient to consolidate all pending actions for discovery and pre-trial purposes.  (Robinson Br. Partial Opp'n to Consol. Gregory Case Feb. 26, 2008 at 3.)

firms, and liaison counsel.  (Joint Mot. Kirkbride June 9, 2008 at 2.)

Defendants argue for further consolidation, but do not contest the motions for partial consolidation.  (Defs.' Resp. Feb. 19, 2008 at 3-4.)  Defendants request that the court consolidate all the pending putative class actions. (Id.)

For the reasons set forth below, the motions to consolidate are GRANTED and the motions for appointment of lead plaintiff and approval of lead counsel are DENIED.

## I.  BACKGROUND

### A.  Factual Context

Morgan Keegan Select Fund, Inc. ("MK Select") is an open-end management investment company[2] that consists of three portfolios: Regions Morgan Keegan Select Short Term Bond Fund ("Short Term Fund"), Regions Morgan Keegan Select Intermediate Bond Fund ("Intermediate Fund"), and Regions Morgan Keegan Select High Income Fund ("High Income Fund").

---

[2] Open-end funds are a category of investment company established in section five of the ICA.  15 U.S.C. §80a-5(a).  In "an open-end company, additional shares are usually issued to each new investor."  Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 20.5 n 1 (West Group 4th ed. 2002).  Open-end funds are not traded on a secondary market, so liquidity is "provided by the requirement that open-end investment company shares be redeemable" by the company at the per share net asset value.  Id. at §§ 20.4[3]-[4].  Open-end funds are subject to special regulations that address the funds' need for liquidity, because they must stand ready at all times to redeem shares.

(Atkinson Am. Compl. ¶ 7.)  Collectively, these three funds are referred to as the "Open-End Funds."

Morgan Asset Management, Inc. ("Morgan Asset") managed and advised the Open-End Funds during the relevant time period.  (Atkinson Am. Compl. ¶ 28.)  Morgan Asset also acted as investment adviser to several closed-end funds[3]: the RMK Multi-Sector High Income Fund, Inc. ("RHY Fund"), the RMK Advantage Income Fund, Inc. ("RMA Fund"), the RMK Strategic Income, Fund, Inc. ("RSF Fund"), and the RMK High Income Fund, Inc. ("RMH Fund").  (Willis Compl. ¶¶ 1, 4; DeJoseph Compl. ¶¶ 1, 21.)  The RMA Fund, RSF Fund, and RMH Fund are collectively referred to as the "Closed-End Funds."[4]

Morgan Asset collects management fees based on the value of the net assets in the funds it manages.  (Atkinson Am. Compl. ¶ 28; DeJoseph Compl. ¶ 21.)  Morgan Keegan & Company, Inc. ("Morgan Keegan"), a broker/dealer that provided accounting and administration services for the funds, was also paid a fee based on the net assets in each fund.  MK Holding, Inc.  (the parent company of Morgan

---

[3] Closed-end funds are the second category of investment company established in section five of the ICA.  15 U.S.C. §80a-5(a).  "In a closed-end investment company, the issuer puts out a limited number of shares."  Hazen, supra note 2, at § 20.5 n 1.  Closed-end funds are traded on the secondary market.  Id. at § 20.4[4].

[4] The RHY Fund is also a closed-end fund, but the Parties have treated it separately.  For clarity, it will not be included in subsequent reference to "Closed-End Funds."

Asset) and Morgan Keegan are wholly owned subsidiaries of Regions Financial Corporation ("Regions").

In July, 2007, Morgan Keegan disclosed that its proprietary funds were experiencing challenges because of "rising short term interest rates, extremely tight spreads in credit markets, and volatility in sub-prime mortgage markets." (DeJoseph Compl. ¶¶ 6, 64.) In August, Morgan Keegan revealed that the "recent instability in the market for fixed income securities, particularly mortgage-backed securities, has affected the liquidity of the Funds portfolio." (Hartman Compl. ¶ 51; DeJoseph Compl. ¶ 8.) Given the difficulty Morgan Keegan had in valuing the assets in its portfolios in the absence of market demand, "the Board of Directors [] retained an independent valuation consultant to assist in determining the fair value of certain of the Funds portfolio securities." (Id.)

The funds sustained significant losses during 2007. The Open-End Funds lost between 16.4 percent and 61.4 percent of their total value. (Atkinson Am. Compl. ¶¶ 68-70.) From July 2007 to December 2007, the Closed-End Funds lost between 52.5 percent and 53.3 percent of their value. (DeJoseph Compl. ¶ 10.) Plaintiffs contend that these losses are magnitudes greater than those suffered by similar funds and support the argument that Defendants

pursued an unusually risky investment strategy.  (Atkinson
Am. Compl. ¶ 71.)  According to Plaintiffs, Defendants'
investment strategy, which focused on collateralized debt
obligations ("CDOs"), including mortgage-backed and asset-
backed securities, violated securities laws and was not
adequately disclosed to investors. (Atkinson Compl. ¶¶ 1,
275, 285, 293, and 297.)

   **B.  Putative Class Actions Filed**

   Five putative class actions have been filed on behalf
of investors in closed-end and open-end funds offered by
Morgan Keegan.  All of these actions allege that Defendants
made material false statements, misrepresentations, and
omissions about the funds investment strategies and
violated the Securities Act, the Exchange Act, and the ICA.

   The first of these actions, Atkinson v. Morgan Asset
Management, et. al., C.A. No. 2:07-cv-02784-SMH-dkv, was
filed on December 6, 2007.  Atkinson was brought on behalf
of purchasers of the Intermediate Fund and the High Income
Fund between December 6, 2004 and October 3, 2007, alleging
violations of sections 11, 12 and 15 of the Securities Act,
15 U.S.C. §§77(k), 77(l), and 77(o), and section 34(b) of
the ICA, 15 U.S.C. §80a-33.  (Atkinson Compl. ¶¶ 1, 275,
285, 293, and 297.)  The Atkinson complaint was later

amended to add purchasers of the Short Term Fund.
(Atkinson Am. Compl. ¶ 1.)

The second putative class action, <u>Willis v. Morgan Keegan & Company, Inc., et. al</u>., C.A. 2:07-cv-2830-SHM-sta, was filed on December 21, 2007, asserting claims on behalf of purchasers of the Open-End Funds and the RHY Fund. (Willis Compl. ¶ 1.)  The <u>Willis</u> complaint does not specify a class period, but includes purchasers of securities whose losses are "traceable" to the Defendants' false and misleading statements.  (<u>Id.</u> at ¶ 1.)  The <u>Willis</u> action alleges violations of sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§77(k), 77(l), and 77(o) (2004). (<u>Id.</u> at ¶¶ 92, 102, and 110.)

On February 4, 2008, <u>Hartman v. Morgan Keegan & Company, Inc. et. al.</u>, C.A. 2:08-cv-2071-SHM-dkv, was filed on behalf of purchasers of the Open-End Funds and the RHY Fund between December 6, 2004, and November 7, 2007. (Hartman Compl. ¶ 1.)  The <u>Hartman</u> action also alleges violations of sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§77(k), 77(l), and 77(o).  (<u>Id.</u> at ¶¶ 92, 102, and 110.)

<u>Gregory v. Morgan Keegan & Co., Inc.</u>, et. al., C.A. 2:08-cv-02078-SHM-dkv, was filed on February 6, 2008, on behalf of purchasers of the RMA Fund, the RSF Fund, and the

RMH Fund between December 6, 2004, and February 6, 2008. (Gregory Compl. ¶ 1.)  The Gregory complaint alleges violations of sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§77(k), 77(l), and 77(o).  (Id. at ¶¶ 74, 87, and 97.)

On February 26, 2008, Massey v. Morgan Keegan & Co., Inc., et al., C.A. 2:08-cv-02127-SHM-dkv, was filed on behalf of purchasers of the Closed-End Funds.  (Massey Compl. ¶¶ 1-3.)  This case was dismissed without prejudice on May 9, 2008, and is no longer pending before the Court. (Massey Order of Dismissal.)

Finally, DeJoseph v. Morgan Keegan & Co., Inc., et al., C.A. 2:08-2212-SHM-dkv, was filed on April 4, 2008, on behalf of purchasers of the Closed-End Funds during the period from December 8, 2006, to December 5, 2007. (DeJoseph Compl. ¶ 1.)  The DeJoseph action alleges that Defendants violated sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5.  (Id. at ¶¶ 123, 128.)

The following chart summarizes the proposed plaintiff classes and causes of action asserted in the pending cases:

| | Atkinson | Willis | Hartman | Gregory | DeJoseph |
|---|---|---|---|---|---|
| **Plaintiffs invested in:** | | | | | |
| Open-End Funds | X | X | X | | |
| RHY Fund | | X | X | | |
| Closed-End Funds | | | | X | X |
| | | | | | |
| **Causes of Action:** | | | | | |
| §11 Sec. Act | X | X | X | X | |
| §12 Sec. Act | X | X | X | X | |
| §15 Sec. Act | X | X | X | X | |
| §34 ICA | X | | | | |
| §10 Exchange Act | | | | | X |
| §20 Exchange Act | | | | | X |

All of the putative class actions name the following corporate Defendants: Morgan Asset, Regions, and Morgan Keegan; and individual Defendants: Allen B. Morgan, James Stillman R. McFadden, Archie W. Willis, III, Mary S. Stone, W. Randall Pittman, J. Kenneth Alderman, J. Thompson Weller, Brian B. Sullivan, Charles D. Maxwell, James C. Kelsoe, Michele F. Wood, Jack R. Blair, and Albert C. Johnson. The actions also include the Funds' independent registered public accountants, PricewaterhouseCoopers LLP ("PWC") as a Defendant. All actions, except DeJoseph, name MK Holding, Inc., Carter E. Anthony, Joseph C. Weller, and David Tannehill as Defendants. Willis and Hartman also name MK Select and the RHY Fund as defendants. In the Gregory and DeJoseph actions, the Closed-End Funds are

named Defendants. The <u>Atkinson</u> complaint identifies three additional Defendants: Regions Bank, William Jeffries Mann, and David M. George.  <u>Gregory</u>  also names William Jeffries Mann, James D. Witherington, Jr., and R. Patrick Kruczek as Defendants.

The following chart summarizes the named Defendants in each of the putative class actions:

| | **Atkinson** | **Willis** | **Hartman** | **Gregory** | **DeJoseph** |
|---|---|---|---|---|---|
| **Defendants:** | | | | | |
| MK Select | | X | X | | |
| RHY Fund | | X | X | | |
| Closed-End Funds | | | | X | X |
| Morgan Asset | X | X | X | X | X |
| Regions | X | X | X | X | X |
| Regions Bank | X | | | | |
| Morgan Keegan | X | X | X | X | X |
| MK Holding. | X | X | X | X | |
| PWC | X | X | X | X | X |
| Allen B. Morgan | X | X | X | X | X |
| Carter Anthony | X | X | X | X | |
| Joseph Weller | X | X | X | X | |
| J. McFadden | X | X | X | X | X |
| A. Willis, III | X | X | X | X | X |
| Mary S. Stone | X | X | X | X | X |
| W. R. Pittman | X | X | X | X | X |
| J. K. Alderman | X | X | X | X | X |
| J. T. Weller | X | X | X | X | X |
| Brian Sullivan | X | X | X | X | X |
| Charles Maxwell | X | X | X | X | X |
| James C. Kelsoe | X | X | X | X | X |
| David Tannehill | X | X | X | X | |
| Michele Wood | X | X | X | X | X |
| Jack R. Blair | X | X | X | X | X |
| Albert Johnson | X | X | X | X | X |
| William J. Mann | X | | | X | |
| David George | X | | | | |
| J. Witherington | | | | X | |
| R. Kruczek | | | | X | |

## C.  Motions to Consolidate, Appoint Lead Plaintiff, and Approve Counsel

On December 6, 2007, Lockridge Grindal Nauen, PLLP published notice of the filing of the Atkinson action in Prime Newswire.  (Aviotti/Landers Mot. Consol. Feb. 4, 2008, Broadhurst Aff., Ex. A ("Lockridge Notice 12/6/07").) The notice informed investors that a class action suit had been filed on behalf of investors who had purchased shares of the Intermediate Fund and the High Income Fund between December 6, 2004, and October 3, 2007.  (Id.)  The notice further informed investors that they could move the Court to be appointed lead plaintiff no later than February 4, 2008.  (Id.)  On December 21, Coughlin Stoia Geller Rudman & Robins, LLP published a notice advising investors in the High Income Fund, Intermediate Fund, Short Term Fund, and RHY Fund that they had sixty days from December 6, 2007, to move the Court to be appointed lead plaintiff. (Aviotti/Landers Mot. Consol. Feb. 4, 2008, Broadhurst Aff., Ex. H. ("Coughlin Notice 12/21/07").)

By February 5, 2008, seven plaintiffs or groups of plaintiffs moved for consolidation, appointment of themselves as lead plaintiff, and approval of lead counsel: Aviotti/Landers, Robinson/Massey, U.A. Local 119, Savage Trust, McDonald Group, Regions Morgan Keegan Investor

Group, and Morgan Keegan Mutual Fund Investors.  All
movants, except the Aviotti/Landers Group and G.A.
Robinson, have since withdrawn their motions.  The
Aviotti/Landers Group[5] moved to consolidate only the claims
asserted on behalf of investors in the Open-End Funds in
Atkinson, Willis, and Hartman. (Aviotti/Landers Mot.
February 4, 2008.)  On February 19, 2008 the Masseys
withdrew from the Robinson/Massey plaintiff group.
(Robinson Mot. February 19, 2008.)  Robinson seeks to be
appointed lead plaintiff only on behalf of investors in the
RHY fund.  (Id.)

Falls & Veach published notice of the Gregory class
action on February 7, 2008.  (Kirkbride Mot. April 7, 2008,
Burt Aff, Ex. A ("Falls Notice 2/7/08").)  The notice
advised investors who purchased the RMA Fund, RSF Fund, or
RMH fund from December 6, 2004, to December 6, 2007, that
they could file a motion to be appointed lead plaintiff no
later than sixty days from February 7, 2008.  (Id.)  Five
plaintiffs or groups of plaintiffs moved for consolidation
of the Gregory and DeJoseph actions and for appointment as
lead plaintiff for the Open-End Funds:  Walter Kikbride,

---

[5] Pete Aviotti, Jr. withdrew as a member of the Aviotti/Landers Group on
August 21, 2008.  (Notice of Withdrawal of Pete Aviotti, Jr.) The
parties have not suggested a new name for this group following
Aviotti's withdrawal.

the Bauler Trust, the Berman Group, DeJoseph/Floweree Group, and Joseph McGoey.  The Bauler Trust withdrew its application for lead plaintiff on April 30, 2008.  (Bauler Notice of Withdrawal Apr. 30, 2008.)  On June 9, 2008, the movants for lead plaintiff jointly[6] moved for appointment of Walter Kirkbride as lead plaintiff.  (Joint Mot. Kirkbride June 9, 2008.)  Kirkbride does not seek to serve as lead plaintiff for the RHY Fund, only for the RMH, RMA, and RSF closed-end funds.  (Id. at 5 n. 3.)

## II.  JURISDICTION

The claims asserted in the putative class actions arise under the federal Securities Act, Exchange Act, and the ICA.  This Court has jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331.  The Court also has jurisdiction over Securities Act claims under 15 U.S.C. § 77v, over Exchange Act claims under 15 U.S.C. § 78aa, and over ICA claims under 15 U.S.C. § 80a-43.

## III. ANALYSIS

The Private Securities Litigation Reform Act ("PSLRA") provides district courts with "a sequential roadmap" for handling securities class action cases.  In re

---

[6] The Berman Group and DeJoseph/Floweree Group joined in the motion of Walter Kirkbride and, thereby, withdrew their applications for appointment of lead plaintiff.  (Joint Mot. Kirkbride June 9, 2008 at 5.) According to the Joint Motion, counsel for Joseph McGoey advised counsel for Kirkbride that McGoey did not oppose appointment of Kirkbride as lead plaintiff.  (Id.)

<u>Microstrategy, Inc. Sec. Litig.</u>, 110 F. Supp. 2d 427, 430
(E.D. Va. 2000).  "First, where multiple class actions
alleging similar facts have been filed, a district court
must entertain and resolve any motions to consolidate."
<u>Id.</u>; 15 U.S.C. §§ 77z-1(a)(3)(B)(ii) and 78u-
4(a)(3)(B)(ii).  Next, the district court, "guided by
specific statutory guidelines, must select a lead
plaintiff."  <u>In re Microstrategy, Inc. Sec. Litig.</u>, 110 F.
Supp. 2d at 430; 15 U.S.C. §§ 77z-1(a)(3)(B)(i) and 78u-
4(a)(3)(B)(i).  Third, the district court must decide
whether to approve the selected lead plaintiff's choice of
lead counsel.  15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-
4(a)(3)(B)(v).

**A. Consolidation**

"The threshold issue under the PSLRA is
consolidation."  <u>In re Microstrategy, Inc. Sec. Litig.</u>, 110
F. Supp. 2d at 430.  Although the timing of consolidation
is dictated by the PSLRA, the principles governing
consolidation are found in Federal Rule of Civil Procedure
42(a).  Where several actions that "involve a common
question of law or fact" are pending before a court, that
court may (i) "join for hearing or trial any or all matters
at issue in the actions;" (ii) "consolidate the actions;"
or (iii) "issue any other orders to avoid unnecessary cost

15

or delay." Fed. R. Civ. P. 42(a). "A court may issue an order of consolidation on its own motion and despite the protestations of the parties." Cantrell v. GAF Corp., 999 F.2d 1007, 1011 (6th Cir. 1993) (citing In re Air Crash Disaster at Detroit Metro. Airport, 737 F.Supp. 391, 394 (E.D. Mich. 1989)).

Whether cases involving the same factual or legal questions should be consolidated is a matter within the discretion of the trial court. See Cantrell, 999 F.2d at 1011. A trial court deciding whether to consolidate actions must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Id. (citing Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985)). Although conserving "judicial resources is a laudable goal," "if the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny." Cantrell, 999 F.2d at 1011.

### 1. Pending Motions to Consolidate

16

Before the Court are two motions to consolidate.  The Aviotti/Landers Group moves for partial consolidation of the Atkinson, Willis, and Hartman actions.  Aviotti/Landers moves to consolidate only the claims asserted on behalf of investors in the Open-End Funds.  Kirkbride moves for consolidation of the Gregory and DeJoseph actions.  Defendants do not oppose the motions for consolidation.

The actions the Aviotti/Landers Group and Kirkbride move to consolidate share both factual and legal issues, arise from the same facts, raise similar legal claims, and name substantially the same Defendants.  "[S]light differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where the essential claims and factual allegations are similar."  In re Microstrategy, Inc. Sec. Litig., 110 F. Supp. 2d at 431.  The proposed consolidation would save judicial resources and prevent unnecessary cost and delay.  No party has objected to consolidation, and the Court has no reason to conclude that any party would be prejudiced if the Court grants the motions for consolidation.[7]

The claims of investors in the Open-End Funds asserted in Atkinson, Willis, and Hartman actions should be

---

[7] At this stage of the proceedings, the Court need not decide whether further consolidation for trial purposes would be appropriate.

consolidated.  The claims of investors in the Closed-End
Funds asserted in Gregory and DeJoseph should also be
consolidated.  For the foregoing reasons, the Court finds
good cause to consolidate the actions and GRANTS the
Kirkbride and Aviotti/Landers Group motions to consolidate.

### 2. RHY Fund

There is no motion before the Court to consolidate the
RHY Fund claims asserted in the Willis and Hartman actions
with the Open-End or Closed-End Funds.  Nevertheless, the
Court may consolidate the actions on its own motion.  If
the Court does not consolidate these claims, they will
proceed separately in the Willis and Hartman actions.  The
savings to the judicial system and the decrease in the
burden on parties if these cases are consolidated warrants
consideration although there is no motion before the Court.

The claims asserted on behalf of investors in the RHY
Fund and the Closed-End funds share factual and legal
questions.  "[T]he claims asserted with regard to the RHY
Fund are more similar to those asserted with regard to the
closed end funds. . ."  (Robinson Br. Feb. 26, 2008 at 3.)
Neither Plaintiffs nor Defendants argue that consolidation
of the claims asserted on behalf of investors in the
Closed-End Funds and the RHY Fund would prejudice any
party.  Consolidating the remaining claims in the Willis

and Atkinson actions with the consolidated Gregory and
DeJoseph actions will save judicial resources and reduce
the burden on the parties and witnesses.  Therefore, the
Court, on its own motion, orders the claims asserted on
behalf of the RHY Fund consolidated with the claims of
investors in the Closed-End Funds in the Gregory and
DeJoseph actions.

### 3. Total Consolidation

Defendants urge the Court to go further and
consolidate all of the pending actions arising out of the
loss in value of the Morgan Keegan proprietary funds,
including two shareholder derivative suits pending before
the court.  There is no motion before the Court to
consolidate all of the putative class actions. The
Defendants are correct that all of the actions before the
Court involve common questions of law or fact.  That,
however, is not the end of the inquiry.  Plaintiffs object
to consolidating the claims of investors in the Open-End
and Closed-End Funds with each other, arguing that such a
consolidation would prejudice the Plaintiffs.  The Court
must consider the Cantrell factors to determine whether the
risk of prejudice created by consolidation is outweighed by
the benefits of consolidation.

The first consideration is the risk of prejudice and
confusion of the issues.  Defendants contend that
consolidation is appropriate because the allegations in the
actions "largely overlap."  (Defs.' Resp. Feb. 19, 2008 at
3.)  If, however, the instances where the allegations do
not overlap have a significant impact on a case,
consolidation may prejudice the parties.  Even if the
majority of the allegations are identical, a few
differences—if significant—may warrant separate cases.

Plaintiffs identify several key differences between
the Open-End and Closed-End Funds that favor separate
actions.  "[T]he significant differences between open-end
funds and closed-end funds include the manner in which
shares are redeemed or sold in those funds, the method by
which shares are offered to the public for sale and the
identity and status of the issuer of the securities in
question."  (Resp. of U.A. Local 119 June 19, 2008 at 6.)
The disparity in how shares are sold (open-end funds are
redeemed by the fund and closed-end funds are sold on a
secondary market) implies that the Defendants' alleged
misrepresentations and omissions would have different
effects on the value of the funds and Plaintiffs' losses.
Therefore, the factual and legal theories of harm argued by

investors in the Open-End and Closed-End Funds will
diverge.

Another important distinction is that separate issuing
documents and regulatory filings were made for each fund.
Defendants state that "the only difference between the
various actions is the particular fund and the offering
documents for each particular fund...." (Defs.' Resp. Feb.
19, 2008 at 3.)  This difference may be significant.
Consolidation in securities fraud class actions is often
warranted where claims "are based on the same 'public
statements and reports.'"  In re Microstrategy Sec. Litig.,
110 F. Supp. 2d at 431 (quoting Werner v. Satterlee,
Stephens, Burke & Burke, 797 F. Supp. 1196, 1211 (S.D.N.Y.
1992)).  In this case, consolidation may not be appropriate
because the claims are not based on the same "public
statements and reports."  The heart of the Plaintiffs'
claims involves the misrepresentations and omissions
Defendants allegedly made in the documents.  Discrepancies
between the statements in the issuing documents and
regulatory filings, as well as variations in required
disclosures, are of consequence to the outcome of the
litigation.

These differences indicate that specific and unique
factual and legal questions will be raised about the Open-

End and Closed-End Funds.  Defendants acknowledge that there will be differences between the factual and legal claims asserted in the Open-End and Closed-End Funds, because they "would have no objection if the Court were inclined to require the filing of one complaint concerning the Open-End Funds and a separate complaint concerning the Closed-End Funds under the umbrella of one consolidated proceeding." (Defs.' Resp. Apr. 25, 2008 at 7-8.)  The differences between the claims involving the Open-End Funds and the Closed-End Funds create a risk of prejudice to Plaintiffs and confusion of the issues if the Open-End and Closed-End Fund claims are consolidated.

The second consideration is the risk of inconsistent adjudications of common factual and legal issues. Defendants are concerned about the risk of inconsistent adjudications if the cases are not totally consolidated. (Defs.' Resp. June 23, 2008 at 5.)  Given that these cases are pending before the same Court, the Court is not concerned that there will be inconsistent adjudications at this stage of the proceedings.[8]

The third consideration is the burden separate litigation would put on the parties, witnesses, and the

---

[8] A jury trial may present a risk of inconsistent adjudications, but the Court, on its own motion or on a motion of one of the parties, may decide that this risk warrants consolidation of the cases for trial at a later time.

judiciary.  Defendants suggest that "the benefits of consolidation... would be largely undone if the Court were to decline to consolidate the [] cases at issue in their entirety."  (Defs.' Resp. Feb. 19, 2008 at 3.)  Total consolidation would decrease the burden on the parties because "potential witnesses and relevant documents likely will be the same in all of the cases."  (Id. at 4.)

     The Court is not persuaded that further consolidation would decrease the burden on the court or the parties. First, duplication can be avoided by coordinating the actions for discovery and pre-trial purposes without consolidation.  Second, consolidating the five pending actions into two will create substantial savings for the judiciary and the parties.  These savings will not be undone if the Court does not further consolidate the actions.  Finally, the burden on the parties and the Court would not be decreased if actions that present unique issues that need to be resolved separately were litigated under the umbrella of one action.  If, as Defendants suggest, separate complaints with unique factual allegations and legal theories were filed under the umbrella of one proceeding, consolidation would not conserve judicial resources.

Based on the facts before the Court, total consolidation would create only slight judicial savings. Therefore, the Court must scrutinize the risk of prejudice more closely.  As discussed, consolidation of all the pending actions might prejudice Plaintiffs and result in confusion of the issues.  Defendants do not argue that they would be prejudiced if the court fails to consolidate the actions, only that consolidation would promote judicial economy.  In this case, the gains to judicial economy from consolidation of all the pending actions do not outweigh the risk of prejudice to the Plaintiffs.

**B.    Appointment of Lead Plaintiff and Approval of Counsel**

The PSLRA requires the Court to appoint a "lead plaintiff" in the initial stages of a putative securities class action proceeding.  15 U.S.C. §§ 77z-1(a)(3)(A)(i) and 78u-4(a)(3)(A)(i).  The plaintiff who filed the first action must publish notice of the filing "in a widely circulated national business-oriented publication or wire service" within twenty days after filing the action.  Id. The notice must (i) include a description of the claim and the class period and (ii) inform other members of the alleged class that they have sixty days from the date of

the notice to move the court to be appointed lead plaintiff.  <u>Id.</u>

       After the court resolves any pending motions to consolidate, the court must determine who among the movants for lead plaintiff is "the most adequate plaintiff."  15 U.S.C. §§ 77z-1(a)(3)(B)(i) and 78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" who (i) "filed the complaint or made a motion in response to a notice," (ii) have "the largest financial interest in the relief sought by the class," and (iii) otherwise satisfy "the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii) and 78u-4(a)(3)(B)(iii).  This presumption may be rebutted only upon proof that the plaintiff (i) "will not fairly and adequately protect the interests of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  (<u>Id.</u>)

## 1.  The Notice Requirement

       Under the PSLRA, notice must (1) be properly published; (2) advise members of a putative class of the relevant details of the pending action, including the claims asserted and the class period; and (3) inform putative class members that they may move the court where

the action is pending to be appointed lead plaintiff.  15
U.S.C. §§ 77z-1(a)(3)(A)(i) and 78u-4(a)(3)(A)(i). "The
purpose of [the notice requirement] is to enable investors
to intervene in the litigation and take charge of it by,
among other things, selecting the lawyers to represent the
class and setting the terms of their compensation." Burke
v. Ruttenberg, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)
(citing Ravens v. Iftikar, 174 F.R.D. 651, 653 (N.D. Cal.
1997)).  A court has an independent duty to scrutinize
published notice for compliance with the PSLRA
requirements.  Janovici v. DVI, Inc., 2003 WL 22849604, at
*5 (E.D. Pa. Nov. 25, 2003).

On December 6, 2007, Lockridge Grindal Nauen PLLP
published notice in Prime Newswire advising investors in
the Intermediate Fund and High Income Fund that they had
until February 4, 2008, to move the court to be appointed
lead plaintiff.  (Lockridge Notice 12/6/07.)  Posting
notice on an online wire service satisfies the publication
requirement.  See, e.g., Greebel v. FTP Software, Inc.,
939, F. Supp. 57, 63-64 (D. Mass. 1996) (holding that
"publication on Business Wire is reasonably calculated to
reach, at least, sophisticated institutional investors" and
"satisfied the [statute's] requirements").  The notice also
satisfied the third requirement by informing purchasers

26

that they "may move the court, no later than February 4,
2008, to be appointed Lead Plaintiff." (Lockridge Notice
12/6/07.)

The notice did not satisfy the second requirement,
which requires that the notice inform members in the
putative class of the pending action.  The December 6,
2007, notice was not directed at investors in the Short
Term Fund.  The December 6, 2007, notice also did not
include the case caption, but a corrected notice published
on December 21, 2007, which included the case caption,
resolved this defect.  (Savage Trust Mot. Consol., Appt. L.
Pl., and Appr. L. Counsel, Aff., Ex. A.)

On December 21, 2007, Coughlin Stoia Geller Rudman &
Robins, LLP published notice in Business Wire that included
purchasers of the RHY Fund and the Short Term Fund in the
putative class.  (Coughlin Notice 12/21/07.)  The notice
met the first requirement; it was published in a widely
circulated business-oriented wire service within twenty
days after the first-filed Atkinson complaint.  The notice
did not inform investors that they had sixty days "after
the date on which the notice is published," to move to be
appointed lead plaintiff, but, instead, incorrectly
informed investors that they had until February 4, 2007, to
move to be appointed lead plaintiff.  It should have

27

notified investors that they had until February 19, 2007, to move the court.  Notice that inadvertently listed an incorrect deadline was not deemed inadequate where "the mistake was discovered and promptly corrected. . . [s]everal hours after the original notice was published." In re Usec Sec. Litig., 168 F. Supp. 2d 560, 567 (D. Md. 2001).  In this case, however, the misstated deadline was never corrected.

The December 21, 2007, Coughlin notice also does not advise potential movants of the caption for the case. Instead, it directs them to Coughlin Stoia's website. "[T]o notify class members of 'the pendency of the action,' the plaintiff or plaintiffs publishing the notice must not only indicate that a case on behalf of a certain group of shareholders is pending, but where the action is pending and the full name and style of the pending action." Burke, 102 F. Supp. 2d at 1316 (emphasis in original).

The Coughlin Stoia notice informs investors in the RHY Fund and the Short Term Fund where the action was filed, but it does not provide the caption of the case or direct investors to another source where this information is available.  The purpose of the notice requirement is to allow potential plaintiffs to investigate and decide whether they would be adequate lead plaintiffs.  Marsden v.

Select Medical Corp., No. Civ.A.04-4020, 2005 WL 113128, at
*3 (E.D.Pa. Jan. 18, 2005) (holding that the purpose of the
notice requirement is "to provide class members with
sufficient information about the suit and the requirements
for lead plaintiff appointment so that they can make an
informed judgment about whether they wish to seek lead
plaintiff status"). Notice that does not provide potential
movants with sufficient information to investigate the
pending action and directs them to the noticing firm's
website does not serve the purpose of the notice
requirement in the PSLRA. Id. ("[T]he notice requirement
is intended to give potential plaintiffs an opportunity to
make this decision without being forced to contact noticing
counsel for additional information.").

The defects in the December 6, 2007, Lockridge notice
and the December 21, 2007, Coughlin notice may have
prejudiced investors in the Short-Term Fund and the RHY
Fund. The notices failed to inform them "of the pendency
of the action" and that they had sixty days from the date
of the notice to apply to be lead plaintiff.

On February 7, 2008, Falls & Veach published notice of
the Gregory action in Business Wire. (Falls Notice
2/7/08.) The notice satisfies all three requirements: it
was properly published; it informed class members of the

pending action, including the case caption; and it informed them that they had sixty days to move the court to be appointed lead plaintiff.

### 2. Open-End Funds Lead Plaintiff

Even if notice to investors in the Open-End Funds, including the Short Term Fund, were adequate, the Court has reservations about appointing the Aviotti/Landers Group lead plaintiff.  The Aviotti/Landers Group is composed of nineteen individuals and institutional investors (twenty before Pete Aviotti withdrew).  Although the Sixth Circuit has not addressed the issue, most courts have found that a large group of unrelated investors would not qualify as the "most adequate plaintiff" under the PSLRA.  See, e.g., In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 816 (N.D. Oh. 1999) (holding amalgamation of unrelated persons is inconsistent with the definition of the phrase "group of persons"); In re Cendant Corp. Litig., 264 F.3d 201, 267 (3d Cir. 2001) (agreeing that "courts should generally presume that groups with more than five members are too large to work effectively"); Barnet v. Elan Corp., PLC, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) ("Recognizing that the question is one of degree, several courts have adopted a 'rule of reason' test, pursuant to which the acceptability of the proposed 'group' is tested against its ability to

represent the interests of the class, and only allowed to proceed as a group if the court determines that 'lawyer-driven' litigation is not likely to result."); In re Razorfish, Inc. Sec. Litig., 143 F.Supp.2d 304, 308-09 (S.D.N.Y.2001) (court concluded group of four unrelated institutional and individual investors was "an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'"); In re Bank One S'holders Class Actions, 96 F. Supp. 2d 780, 783 (N.D. Ill. 2000) (appointing a group of six pension funds as lead plaintiff and rejecting "any choice that was based on the number of shares held by such an assemblage of small holders," because it would "subvert the purposes of the [PSLRA]. . ."); In re Network Assocs., Inc. Sec. Litig., 76 F.Supp.2d 1017, 1019-31 (N.D.Cal.1999) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."); Takeda v. Turbodyne Tech., Inc., 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) (noting that courts have construed a "group of persons" under the PSLRA to mean "a small group of manageable size that is capable of joint decisionmaking regarding the litigation").

"The most important open question under the lead plaintiff section of the PSLRA is whether <u>unrelated</u> individuals or institutions may aggregate their shares in order to be deemed 'the most adequate plaintiffs'. . ." <u>In re Baan Co. Sec. Litig.</u>, 186 F.R.D. 214, 216 (D.D.C. 1999) (citing John C. Coffee, Jr., <u>Developments Under the Private Securities Litigation Reform Act of 1995: The Impact After Two Years</u>, SC53 ALI-ABA 395, 423 (1997)). "Courts confronting this issue refer to the PSLRA's purpose, namely to combat abuse of the class action machinery in securities fraud cases by ensuring that these class actions are controlled," not by law firms, "but by reasonably sophisticated plaintiffs with large or at least, relatively large financial stakes in the case." <u>In re Microstrategy, Inc., Sec. Litig.</u>, 110 F.Supp.2d at 434.

The Aviotti/Landers Group argues that it is composed of only eleven separate entities (now ten), counting husbands and wives as one unit. The Court finds no case where a court has appointed eleven individuals lead plaintiff nor, apparently, could the Aviotti/Landers Group. (<u>See</u> Aviotti/Landers Mem. Opp. Competing Mot. Feb. 22, 2008 at 11.) According to the Aviotti/Landers Group's Memoradum, the largest plaintiff group appointed by a court

was composed of nine individuals, but most were composed of only three to six:

> Delashmet v. Custom Designed Compressor Systems, Inc., 2006 WL 2016080, at *4 (D.N.M. Mar. 9, 2006) (group that aggregated the losses of five plaintiffs to establish the largest financial interest appointed lead plaintiff) (Ex. O); Weltz v. Lee, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001) (group of seven unrelated shareholders appointed as lead plaintiff where the group was not "so cumbersome as to deliver the control of the litigation into the hands of the lawyers"); In re Baan Co. Sec. Litig., 186 F.R.D. 214, 216-17 (D.D.C. 1999) (court found that three to six members of a group was ideal); Takeda v. Turbodyne Technologies, Inc., 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) (seven-member group appointed lead plaintiff); Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 409 (D. Minn. 1998) (group of seven individuals appointed lead plaintiff because it possessed the largest financial interest); In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 352 (S.D. Cal. 1998) (six-person group appointed lead plaintiff); Nager v. Websecure, Inc., 1997 WL 773717, at *1 (D. Mass. Nov. 26, 1997) (nine-person group appointed lead plaintiff) (Ex. P).

(Aviotti/Landers Mem. Feb. 22, 2008 at 11 (emphasis added).)

The Aviotti/Landers Group suggests that a lead plaintiff group of six plaintiffs per fund is consistent with the precedents cited. (Id.) This argument, however, is not substantiated by the case law. Several of the cases Aviotti/Landers relies on explicitly reject large unrelated groups of plaintiffs, because appointing them lead plaintiff would be inconsistent with the goals

of the PSLRA.  "[I]n most cases three [investors] should
be the initial target, with five or six as the upper
limit." <u>In re Baan Sec. Litig.</u>, 186 F.R.D. at 216-17.
According to a Memorandum filed as an amicus brief by
the Securities and Exchange Commission in the Baan
Securities Litigation, "a court generally should only
approve a group that is small enough to be capable of
effectively managing the litigation and the lawyers. . .
.ordinarily this should be no more than three to five
persons." <u>Id.</u> at 216-217 (citing SEC Mem.).  The <u>Baan</u>
court found that "a 20-person committee would fail to
play the role Congress envisioned for Lead Plaintiffs."
<u>In re Baan Sec. Litig.</u>, 186 F.R.D. at 217.  A well-
reasoned case from the Northern District of Ohio,
concludes that "the PSLRA evince[s] an intent that a
'group' consist of more than a mere assemblage of
unrelated persons who share nothing in common other than
the twin fortuities that (1) they suffered losses and
(2) they entered into a retainer with the same
attorney." <u>In re Telxon Corp. Sec. Litig.</u>, 67 F.Supp.2d
803, 813 (N.D. Oh. 1999).

    The Aviotti/Landers Group is a large group of
unrelated investors.  Appointing such a group lead
plaintiff would be inconsistent with the purpose of the

PSLRA.  For the foregoing reasons, the Aviotti/Landers
Group's motion for appointment as lead plaintiff and
approval of lead and liaison counsel is DENIED.

### 3. Closed-End Funds Lead Plaintiff

Investors in the RHY Fund may have been prejudiced
by the deficiency in the December 21, 2007, Lockrdige
notice.  Because these investors are now part of the
class represented in the Closed-End Fund litigation, the
defective notice taints the lead plaintiff applicants
for all closed-end funds.  In addition, no movant has
moved for appointment as lead plaintiff on behalf of
investors in all the closed-end funds.  Kirkbride has
moved the Court to appoint him lead plaintiff in the
consolidated Gregory and DeJoseph actions, which do not
assert claims on behalf of investors in the RHY Fund.
G. A. Robinson has moved to be appointed lead plaintiff
only on behalf of investors in the RHY Fund.[9]

The Court is reluctant to appoint co-lead
plaintiffs to direct the litigation of all closed-end
funds.  Lead plaintiff has a fiduciary duty to all class
members and is obligated to protect those interests,
even if they are not identical to the lead plaintiff's.

---

[9] G. A. Robinson does not oppose consolidation of the RHY Fund with the
other closed-end funds, but argues that a separate plaintiff should be
appointed for the RHY Fund.

<u>Howard Gunty Profit Sharing Plain v. CareMatrix Corp.</u>,
354 F.Supp.2d 18, 23-24 (D. Mass. 2000) (lead plaintiff
has a fiduciary duty to the proposed class, "which
includes a duty to pursue in good faith the largest
available recovery") (citing <u>In re Network Assoc., Inc.,
Sec. Litig.</u>, 76 F.Supp.2d at 1024-25).  The claims of
these plaintiffs were sufficiently similar to warrant
consolidation.  Therefore, the Court is not persuaded
that a single lead plaintiff with a fiduciary duty to
protect the interests of the class would not do so.

The Court is also concerned that Kirkbride will not
"fairly and adequately protect the interests of the class"
as required by the PSLRA, because of the law firm structure
he endorses.  Fed. R. Civ. P. 23(A)(4); <u>see</u> 15 U.S.C. §§
77z-1(a)(3)(B)(iii) and 78u-4(a)(3)(B)(iii).  "The adequacy
requirement is satisfied if (1) the class counsel is
qualified, experienced, and generally able to conduct the
litigation; (2) the interests of the class members are not
antagonistic to one another; and (3) the lead plaintiff has
a sufficient interest in the outcome to ensure vigorous
advocacy."  <u>Skwortz v. Crayfish Co., Ltd.</u>, 2001 WL 1160745,
at *6 (S.D.N.Y. Sept. 28, 2001) (citing <u>In re Olsten Corp.
Sec. Litig.</u>, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)).

The Telxon court concluded that a lead plaintiff applicant was not entitled to lead plaintiff status, in part, because "the counsel structure it proposes would inhibit the fair and adequate representation of the plaintiff class as a whole." In re Telxon Corp. Sec. Litig., 67 F.Supp.2d at 816. The group proposed "a three-tiered counsel structure, with three firms. . . to act as lead counsel, an 'Executive Committee' of counsel consisting of seven law firms, and the designation of yet an additional firm to serve as liaison counsel." Id.

Kirkbride proposes the structure rejected by the Telxon court. He suggests four law firms assist in the litigation: one firm to serve as lead counsel, two as members of an Executive Committee, and one as liaison counsel. This arrangement is likely to result in lawyer-led litigation in contravention of the purpose of the PSLRA. See In re Milestone Scientific Sec. Litig., 187 F.R.D. 165, 177 (D.N.J. 1999) ("where several lead counsel are appointed, there is the potential that they may ultimately seize control of the litigation, an occurrence the PSLRA intended to foreclose").

G. A. Robinson has not moved to be appointed lead plaintiff of all the closed-end funds. Even if he had,

the court would be reluctant to appoint him because of the defects in the notice required by the PSLRA.

For the foregoing reasons, the motions of G. A. Robinson and Walter Kirkbride for appointment of themselves as lead plaintiff and approval of lead counsel are DENIED.

## IV. CONCLUSION

### A. Motions to Consolidate

The Court GRANTS the motions to consolidate submitted by the Aviotti/Landers Group and Walter Kirkbride.  On its own motion, it also consolidates the claims asserted on behalf of investors in the RHY Fund with the Gregory and DeJoseph actions and it is ORDERED that:

(1)  The Atkinson, Willis, and Hartman actions, except as to claims against the RHY Fund and on behalf of shareholders in the RHY fund, are hereby consolidated with respect to the Open-End Funds.  This consolidated matter shall be identified as In re Regions Morgan Keegan Open-End Mutual Fund Litigation, Civil Action No. 2:07-cv-02784-SHM-dkv, and the files of the action shall be maintained in one file under Master File No. 2:07-cv-02784-SHM-dkv.

(2)  The Gregory and DeJoseph actions and the claims asserted on behalf of the shareholders of the RHY Fund in the Willis and Hartman actions, are hereby consolidated.

This consolidated matter shall be identified as In re Regions Morgan Keegan Closed-End Fund Litigation, Civil Action No. 2:07-cv-02830-SHM-dkv, and the files of the action shall be maintained in one file under Master File No. 2:07-cv-02830-SHM-dkv.

(3)  This Order shall apply automatically to all other substantively related actions arising out of or related to the same facts as alleged, or involving claims similar to those alleged, in the captioned actions, which have been filed, may be filed, or are transferred to this Court.

### B.  Motions for Appointment as Lead Plaintiff and Approval of Lead and Liaison Counsel

The Court DENIES the motions for appointment as lead plaintiff and approval of lead and liaison counsel submitted by the Aviotti/Landers Group, Walter Kirkbride, and G. A. Robinson and ORDERS that:

Within twenty days after entry of this order, plaintiffs in the Atkinson action shall re-publish notice of the pending class action In re Morgan Keegan Open-End Mutual Fund Litigation, CA 2:07-2784-SHM-dkv. In accordance with the PSLRA, the notice shall advise investors in the High Income Fund, Intermediate Fund, and Short-Term Fund that they have sixty days from the

date of the notice to move the Court to be appointed lead plaintiff.

Plaintiffs in the Willis action shall re-publish notice of the pending class action In re Morgan Keegan Closed-End Fund Litigation, CA 2:07-2830-SHM-dkv, within twenty days after entry of this order. In accordance with the PSLRA, the notice shall inform investors in the RHY Fund, RMA Fund, RSF Fund, and RMH Fund of the pending action and that they have sixty days from the date of the notice to move the Court to be appointed lead plaintiff.

So ordered this 23rd day of September, 2008.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE